620 A.2d 351

**RTKL ASSOCIATES, INC., et al.**

v.

**FOUR VILLAGES LIMITED PARTNERSHIP, et al.**

No. 53, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Feb. 24, 1993.

John A. King (King & Attridge, on the brief), Rockville, for appellant, RTKL Associates, Inc.

Douglas W. Biser, Mudd, Harrison & Burch, Towson, Glenn E. Bushel and Brocato, Price & Bushel, P.A., Baltimore, on the brief, for appellant, Favazza & Son, Inc.

Kenneth F. Spence, III (Charles R. Diffenderffer, and Miles & Stockbridge, Towson, Kristine A. Crosswhite, and Miles & Stockbridge, Baltimore, on the brief), for appellees.

Argued before BISHOP, ROSALYN B. BELL and FISCHER, JJ.

FISCHER, Judge.

This appeal is from a denial by the Circuit Court for Baltimore County (Fader, J.) of appellants' demand for arbitration. This case has been winding its way through the courts since April, 1986 when the Council of Unit Owners of Annen Woods Condominium No. 4 (Council) filed a complaint against several parties including the developer, Four Villages Limited Partnership and Jonas Brodie (FVLP); the architect, RTKL Associates Inc. (RTKL); and the contractor, Frank Favazza and Sons, Inc. (Favazza). On May 16, 1986, RTKL filed a cross-claim against FVLP, Favazza, and others not now involved in this appeal. On July 7, 1986, Favazza sued, by way of cross-claim, FVLP, RTKL and others. On October 10, 1986, FVLP responded by filing a cross-claim against RTKL, Favazza and others. RTKL and Favazza filed timely defenses to FVLP's cross-

claim but failed to raise arbitration as an affirmative defense. On March 26, 1991 and April 5, 1991, RTKL and Favazza, respectively, moved for summary judgment as to the Council's claims against them. The trial court granted the motions on May 16, 1991. Subsequently, on August 19, 1991 and August 30, 1991, RTKL and Favazza, respectively, demanded arbitration of their dispute with FVLP. The trial court denied the petitions to arbitrate, and this appeal followed.

Favazza presents two questions for our review:

I.  Does the contract between Favazza and FVLP contain an agreement which requires claims such as those asserted by FVLP to be submitted to arbitration?

II.  Did Favazza waive its right to arbitration by failing to make its demand at a time when both FVLP and Favazza were co-defendants in a lawsuit filed by the condominium association?

RTKL, meanwhile, presents one issue for our review:

I.  Whether the circuit court erred in denying RTKL's Motion to Dismiss Third Party Claim and Petition for Order to Arbitrate.

## I.

The obvious answer to Favazza's first question is that the issue of whether there exists an agreement to arbitrate was not decided by the trial court[1] and, therefore, will not be decided by us. Md.Rule 8–131 (ordinarily, the appellate court will not decide an issue unless it plainly appears to have been raised in or decided by the trial court); *Braun v. Ford Motor Co.*, 32 Md.App. 545, 548–549, 363 A.2d 562 (1976) (appellate courts look only to the rulings made by a trial judge, or his failure to act when action was required, to find reversible error). In any event, it appears conceded by the parties that a valid agreement to arbitrate

---

1.  The trial court, in reaching its decision, assumed, but did not decide, that an agreement existed.

existed between Favazza and FVLP. The issue that the trial court should have addressed is whether an agreement to arbitrate existed between RTKL and FVLP. In addition, since the question of whether an arbitration agreement exists between RTKL and FVLP is primarily a question of fact upon which conflicting evidence and testimony was introduced, we cannot reach that issue.

## II.

■ For purposes of this discussion, we will consider Favazza's second issue (regarding waiver of arbitration) along with RTKL's issue concerning dismissal of the petitions to arbitrate. The trial judge, in denying appellants' petitions to arbitrate, held, in effect, that the demands for arbitration were not timely made and that prejudice was occasioned upon FVLP due to the lateness of the demands. In our review, we afford deference to the trial judge's findings of fact, and we will affirm these findings unless they are clearly erroneous. Upon review of the trial judge's rulings on matters of law, however, we are free to substitute our judgment for that of the trial judge.

This case arrives before us in an unusual posture. The litigation proceeded normally in the circuit court until the court granted summary judgment in favor of Favazza and RTKL on the claim of the plaintiff, Council. Since the summary judgments were entered on an amended complaint and FVLP's cross-claims were asserted with respect to the original complaint, the court opined that FVLP had no existing claims against Favazza and RTKL. The court then permitted FVLP to amend its cross-claims (now third party claims) against Favazza and RTKL orally. Thereafter, the case was poised to go to trial with FVLP as the defendant and cross-claimant against Favazza and RTKL. At that point, Favazza and RTKL demanded arbitration and, following the denial of the petitions to arbitrate, this appeal ensued. FVLP requested a postponement of its trial with Council until the conclusion of this appeal, but the court refused to grant a continuance. The case then proceeded to trial, and a verdict was returned in favor of the Council of

Unit Owners against FVLP. The issue now is whether the third party claims are to be tried in the circuit court or whether they should be resolved through arbitration.

This matter is further complicated by the additional issue (not decided by the trial court) that RTKL and FVLP may not have had an agreement to arbitrate. Since the cases between the developer, contractor, and architect are to some extent interrelated, it would appear desirable that the third party claims against both Favazza and RTKL be resolved in the same proceeding.

Favazza, pointing primarily to this Court's opinion in *Bel Pre Medical Center v. Frederick Contractors*, 21 Md.App. 307, 320 A.2d 558 (1974), *modified*, 274 Md. 307, 334 A.2d 526 (1975), avers that the Maryland Uniform Arbitration Act of 1965 established a public policy in this State favoring the settlement of disputes through the arbitration process. Appellee recognizes that arbitration is the favored forum, but insists that the appellants, by their inaction, have waived their right to demand arbitration.

All of the parties have reasonable arguments in support of their respective positions. Appellees contend that appellants waived their right to arbitration by "choosing a judicial forum to resolve their disputes." Appellees point out that both Favazza and RTKL filed cross-claims against FVLP prior to being sued by FVLP. Appellees also indicate that, for almost five years after joinder of the cases, appellants failed to give notice of an intention to seek arbitration. Appellees aver that, by actively participating in the judicial proceeding by way of availing themselves of discovery and other litigation vehicles unavailable in arbitration, RTKL and Favazza acted inconsistently with an intention to arbitrate. On the other hand, appellants contend that, under the circumstances of this case, their participation in the litigation cannot be construed as a waiver of the right to arbitration. They point to the fact that they did not initiate the litigation; they were sued by Council (with whom they had no arbitration agreement), and they therefore contend that their participation in the litigation was

involuntary. RTKL asserts that no inference of an intentional waiver of arbitration can occur where its participation in litigation was compelled by a plaintiff with whom it had no arbitration agreement.

In the absence of any Maryland cases on this point, RTKL cites two federal admiralty cases that it contends are analogous. RTKL relies primarily upon *Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855 (2nd Cir.1985), an admiralty case involving indemnity cross-claims between an owner and a charterer who had been sued by a shipper. The shipper had no arbitration agreement, but an arbitration agreement did exist between the owner and charterer. The plaintiff shipper brought the action seeking damages for the loss at sea of five large mobile cranes. Named as defendants were the ship, its owner, Drescher, the charterer, Venline, and Venline's general agent. While no arbitration agreement existed between the shipper and the defendants, an agreement existed between Drescher and Venline. The court held:

> Although Venline participated in the litigation, *it asserted the right to arbitrate at the very outset when it filed its answer to the amended complaint and cross-claim.* Moreover, since Venline could not prevent plaintiffs from proceeding with their claims, it had no choice but to participate. Waiver may not be inferred on the basis of conduct relating to non arbitrable issues.

*Seguros Banvenez, S.A.*, 761 F.2d at 862 (emphasis supplied; citations omitted). The court ultimately ordered the matter submitted to arbitration:

> Although a party may waive its right to arbitration by inconsistent resort to litigation [citations omitted], such a waiver 'is not to be lightly inferred,' [citations omitted]. The district court erred in finding a waiver in this case. Drescher has failed to demonstrate the kind of prejudice necessary to support such a finding [citations omitted].

*Seguros Banvenez, S.A.*, 761 F.2d at 862.

RTKL also cites *Lubrizol International, S.A. v. M/V Stolt Argobay*, 562 F.Supp. 565 (S.D.N.Y.1982), another

case involving cross-claims between defendants sued by a party with whom they had no arbitration agreement. After four and one-half years of litigation, the court ordered arbitration between the cross-claimants. The court ruled that the owner's participation in the litigation was not inconsistent with the exercise of arbitration rights, since the owner could not compel arbitration with the party bringing suit.

RTKL admits that a relevant factual difference between the case at bar and the two admiralty cases is that RTKL "did not engage in the futile exercise of raising arbitration in its cross-claim or in its answer to FVLP's cross-claim in 1986." We believe that is an important, and perhaps a determinative, difference in this very close case.

In denying the petitions to arbitrate, the trial judge stated:

Well, with regard to paper 238, Favazza's Petition to Arbitrate and Motion for Stay and paper 231, RTKL's Motion to Arbitration and Motion to Stay, both denied.

Let's assume that there is an agreement to arbitrate with regard to both parties and base the decision of the Court upon that. I'm going to deny it except for the unresolved question of different causes of action which I have to evaluate as we go down the road.

It is also correct that Maryland law had never yet considered the issue of whether or not there is a prejudice aspect as far as arbitration. I believe that when we reach that point and that point is generated, that the appellate courts will in fact say that there is a prejudice aspect as one of the considerations to be made in determining whether or not there has been a waiver of arbitration when in fact that waiver is said to have been done by inaction.

Certainly there are two types of waiver. There is an affirmative type of waiver: David. Yes. Let's waive arbitration. Great. It is done. If that situation occurs, then nobody will consider prejudice. But when a waiver is said to have been done by inaction the idea of waiver or

estoppel of rights has to do and is embedded in a preju-
dice value or prejudice aspect attributable to it. That is
what waiver, that is what estoppel as pronounced by the
Court of Appeals, is about, when by inaction.

In this particular case it just appears to me that assum-
ing the Court of Appeals does what I think that they will
do, that there has been plenty of prejudice, certainly more
than sufficient with all of these years down the road.

It is very, very easy to see prejudice occurring or not
occurring from the standpoint of advocacy. But from the
standpoint of judicial decision, it is Monday morning
quarterbacking and in this situation with my familiarity
with the case, with everything that has gone over the hill,
the allegations that have gone back and forth as far as
who is to blame for this and what caused this and how
much the architect actually orchestrated this, itself by its
actions, it just seems to me that there is sufficient preju-
dice in this case that would cross any prejudice threshold
that would cause a Court to indicate that in fact the
waiver by inaction was prejudicial to Brodie at this partic-
ular point.

So for those reasons the denial of the petitions to
arbitrate is recorded by the clerk.

While the court was not extremely specific, it is apparent
that the judge found that FVLP was prejudiced by the fact
that appellants waited five years before demanding arbitra-
tion. FVLP points out, and we believe it significant, that
upon initially being sued by Council, both RTKL and Favaz-
za sued FVLP. Had appellants sought to preserve their
rights to arbitrate, they could have noticed an election for
arbitration rather than filing cross-claims. RTKL and Fa-
vazza participated actively in the litigation both by way of
depositions and other discovery. On May 31, 1991, Favazza
filed a fourth-party complaint against Drecchio Masonry,
Inc., and on June 12, 1991, RTKL propounded interrogato-
ries to FVLP. It is also noteworthy that both RTKL and
Favazza moved for summary judgment against FVLP. An-
other factor weighing against a late demand for arbitration

is that, in anticipation of trial, FVLP was required to participate in the depositions of RTKL's experts and to have its experts prepare rebuttal.

In *Chas. J. Frank, Inc. v. Assoc. Jewish Ch.*, 294 Md. 443, 448–449, 450 A.2d 1304 (1982) (citations omitted), the Court of Appeals stated, "Because the right to arbitrate is a matter of contract, it is possible for parties to waive that right. . . . The intention to waive must be clearly established and will not be inferred from equivocal acts or language. Thus, whether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstances of each case." In *Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 468 A.2d 91 (1983), the Court discussed whether failure to initiate arbitration constitutes a waiver of the right to arbitrate. After citing two cases relative to the responsibility of the party asserting a claim to initiate arbitration, the Court opined, "The rationale underlying these cases is that a party asserting a claim who sues instead of seeking arbitration is in essence refusing to arbitrate and is itself in default of the arbitration agreement." *Gold Coast Mall*, 298 Md. at 109, 468 A.2d 91. In *Stauffer Constr. v. Bd. of Educ.*, 54 Md.App. 658, 667, 460 A.2d 609, *cert. denied*, 297 Md. 108 (1983), now Chief Judge Wilner stated, "Upon the premise, which is more or less universally held, that a resort to litigation is inconsistent with an intent to arbitrate, the Court concluded that one who litigates an issue that otherwise would be subject to arbitration waives his right subsequently to arbitrate that issue." In *NSC Contractors v. Borders*, 317 Md. 394, 402, 564 A.2d 408 (1989), the Court of Appeals ruled, "Where the parties seek to resolve certain arbitrable matters through litigation, the right to arbitration is waived as to those matters necessarily resolved in the proceeding." In a case involving defense of a cross-claim and assertion of a reciprocal cross-claim, the intermediate appellate court of Florida held that "[r]epudiation of an arbitration clause by a defendant without demand for arbitration constitutes an abandonment of the right to arbi-

tration and consent to submission of the controversy to the courts." *King v. Thompson & McKinnon, Auchincloss, etc.*, 352 So.2d 1235 (Fla.App.1977). In *City of Niagra Falls v. Rudolph*, 91 A.D.2d 817, 458 N.Y.S.2d 97 (App.Div. 1982), the court found that a failure to assert the right to arbitration, the subsequent resort to discovery, and the participation in pre-trial activities were sufficient to show a waiver of right to arbitration.

RTKL and Favazza assert that, prior to the May 16, 1991 entry of summary judgment in the favor of Council, a demand for arbitration with FVLP would have been futile since FVLP had no arbitration agreement with Council. As the trial judge pointed out, however, had RTKL and Favazza demanded arbitration with FVLP, the arbitration could have been stayed until after trial between FVLP and Council. While RTKL and Favazza argue that such a result does not differ from the present situation, FVLP insists that, by waiting for five years before demanding arbitration, RTKL and Favazza gained an advantage to which they would not have been entitled had they timely elected to arbitrate.

It seems apparent that RTKL and Favazza had ample opportunity to secure their rights to arbitration (assuming such rights existed) by timely electing to have their respective claims arbitrated. The failure to act timely exposed RTKL and Favazza to a finding that they waived their arbitration rights.

We need not reach the issue with respect to whether prejudice must be occasioned before a waiver may be found because the trial judge found that FVLP was prejudiced by RTKL's and Favazza's five-year silence as to arbitration. We must, of course, give deference to the judge's factual finding of prejudice, and upon the record, we are not prepared to say that the judge was clearly erroneous.

We find that RTKL's and Favazza's five year delay in electing arbitration and their active participation in litigation, not only in discovery activities but also by filing a motion for summary judgment against FVLP, were ade-

quate to support the trial judge's finding that RTKL and Favazza waived their rights to arbitration.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.